UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEO WEATHERS,

    Plaintiff,

v.        Case No. 08-14788

MUTUAL OF OMAHA INSURANCE COMPANY,

    Defendant.
                                          /

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT**

Pending before the court are cross-motions for judgment, filed by Plaintiff Leo Weathers on June 15, 2009, and filed by Defendant Mutual of Omaha Insurance Company on June 30, 2009. Both motions seek final judgment on Plaintiff's claim for accidental death benefits under 29 U.S.C § 1132(a)(1)(B). Having reviewed the briefs, the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion and deny Plaintiff's motion.

**I. BACKGROUND**

Plaintiff initiated this case by filing a complaint on November 14, 2008. Plaintiff's complaint seeks accidental death benefits under an accidental death and dismemberment ("ADD") insurance plan maintained by his employer, Ford Motor Company ("Ford"). The ADD plan is underwritten by Defendant and is governed by the Employee Retirement Income Security Act ("ERISA"). Benefits are available to insured Ford employees in certain cases of physical injury and death. Benefits are funded by

Defendant, who also administers claims under the policy and has authority to make final determinations on eligibility for benefits.

Defendant issued a master insurance policy ("the Policy") to Ford providing Ford's employees with the option of enrolling as insureds under the Policy. (AR 46.) The Policy contained in the administrative record became effective in 2004. (AR 46.) The Policy provides benefits in certain cases of accidental death or physical injury. (AR 33.) When a Ford employee enrolled in the Policy, Defendant issued each enrollee a certificate of insurance. (AR 47.) The insurance certificate (the "Certificate") contained in the administrative record was issued to Plaintiff under the 2004 Policy. (AR 33.) The Certificate states that it replaces "any and all insurance certificates and riders that may have been issued previously to the insured under the previous group accident master policy." (*Id.*) The record does not contain any previous policies or certificates issued to Ford or Plaintiff, and the parties have not pointed to anything (and the court has not found anything) in the record which explicitly ties the 2004 Policy and Certificate to specific, previous policies and certificates issued by Defendant to Ford or Ford employees.

Under the Policy, insureds have the option to enroll for family coverage. (AR 34.) Under the family coverage option an enrollee's dependents are covered as "insured dependents." (*Id.*) The Certificate defines dependents:

"Dependent" shall mean:

> (1) the spouse of the Insured; and
> 
> (2) any unmarried Dependent Children:

>   (a) of the insured by birth, legal adoption or legal guardianship, while such child legally resides with and is dependent upon the Insured; or
>
>   (b) of the Insured's spouse while such child is in the custody of and dependent upon the Insured's spouse and is residing and a member of the Insured's household; or
>
>   (c) as defined in (a) or (b) above who does not reside with the Insured but is the Insured's legal responsibility for the provision of health care (for purposes of this insurance "legal responsibility" shall mean only that responsibility assigned to the Insured by a court of competent jurisdiction); or
>
>   (d) who resides with and is related by blood or marriage to the Insured for whom the Insured provides principal support as defined by the Internal Revenue Code of the United States, and who was reported as a Dependent on the Insured's most recent income tax return or who qualifies in the current year for dependency tax status.

(*Id.*)  Where spouses are employees of Ford and eligible to enroll under the Policy, "in no event can both apply for family coverage."  (*Id.*)  Moreover, pursuant to the Certificate, an individual can be insured under only one certificate at any given time.  (AR 41.)  Apparently, a policy booklet distributed to Ford employees stated that no person can be insured or eligible for dependent life insurance as the dependent of more than one Ford employee.  (AR 12.)  The statement was intended to describe the ADD plan, but erroneously referred to a life insurance plan.  (AR 12.)  The policy booklet does not appear in the record.

   The Policy also places a limit on Defendant's ability to contest the validity of the Policy—after the Policy has been in force for two years, Defendant cannot contest the Policy's validity except for nonpayment of the Policy's premium.  (AR 47.)

3

Leo James-Antoine Weathers ("L.J. Weathers") was born to Plaintiff and his ex-spouse, now known as LoTonya Burston, in 1987. (AR 363.) Although the record indicates that Plaintiff was divorced from Burston in 1997, the parties do not cite anything on the record stating when Burston and Plaintiff married. The divorce court granted joint legal custody to both Plaintiff and Burston, but it granted Burston "primary physical possession." (AR 345.) The divorce court also ordered Burston and Plaintiff to "maintain any health care coverage that is available at a reasonable cost, as a benefit of employment, for [L.J. Weathers]." The divorce court also ordered that Plaintiff "shall pay 49% of any and all uninsured health care expenses incurred by [L.J. Weathers]." (AR 346.)

Plaintiff began working for Ford around 1986. (AR 119.) He first applied for family coverage under an ADD plan beginning in 1995. (AR 16.) No master policy or certificate for the 1995 policy for which Plaintiff applied appears in the record. Burston began working for Ford in 1989. (*Id.*) Burston first applied for family coverage under an ADD plan in 1994. (*Id.*) No master policy or certificate for the 1994 policy for which Burston applied appears in the record.

Plaintiff never covered L.J. Weathers's health care through his benefits with Ford. (AR 250.) The record is equivocal on whether Burston carried health insurance for L.J. Weathers through her employer, Ford. Statements by Plaintiff and Burston indicate that they had an informal agreement obliging Burston to provide L.J. Weathers's insurance through Ford. (AR 5, 6, 7.) But Ford indicated that Burston had no dependents on her health care contract since August 2004. (AR 250.)

4

On February 19, 2006, L.J. Weathers was shot in the leg with a shotgun and died. (AR 124.) In 2006, both Plaintiff and Burston applied for accidental death benefits, due under the Policy issued by Defendant, to cover L.J. Weathers's death. (AR 16.) The disposition of the case was delayed significantly because Defendant required a determination of whether L.J. Weathers's death qualified under the ADD plan. (AR 89.) Finally, in Spring 2008, Defendant denied Plaintiff's claim under the ADD plan, reasoning that L.J. Burston was not Plaintiff's dependent as defined by the Certificate. Defendant granted Burston's claim. (AR 58-60, 307.)

The record contains conflicting evidence on whether L.J. Weathers resided with both Plaintiff and Burston or only with Burston before he died. Some portions of the record indicate that L.J. Weathers split his time between Plaintiff's residence and Burston's residence. (AR 6, 13, 31.) On the other hand, the record indicates that Burston stated that L.J. Weathers had always lived with her and that she had no knowledge of whether L.J. Weathers ever spent a night at Plaintiff's home. (AR 268.) Further, L.J. Weathers's driver's license, school records, insurance card, and credit card statement all state Burston's address as his home address. (AR 363-64, 367-68.) Plaintiff concedes that L.J. Weathers did not reside with him. (Pl.'s Mot. Br. 4.)

## II. STANDARD

In *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998), the Sixth Circuit set forth "Suggested Guidelines" to adjudicate claims based on improper denials of ERISA benefits. A district court's review of a plan administer's determination should normally be confined to the evidence that was in the record before the plan administrator. *Id.* at 618 (citing *Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 437 (6th

5

Cir. 1997)); *Barone v. Unum Life Ins. Co. of Am.*, 186 F. Supp. 2d 777, 779 (E.D. Mich. 2002). The "Suggested Guidelines" in *Wilkins* direct the district court to review a plan administrator's decision based solely on the administrative record and render findings of fact and conclusions of law. *Wilkins*, 150 F.3d at 618; *Barone*,186 F. Supp. 2d at 779.

    The district court reviews a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Marks*, 342 F.3d at 456. "If a plan affords such discretion to an administrator or fiduciary, we review the denial of benefits only to determine if it was 'arbitrary and capricious.'" *Marks*, 342 F.3d at 456 (citing *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991)). In this case, the court has already concluded that it will review the administrator's decision under the "arbitrary and capricious" standard. (*See* 6/9/2009 Order 1.)

    A district court will uphold the determination of an administrator under the arbitrary and capricious standard if it is "rational in light of the plan's provisions." *Marks*, 342 F.3d at 457 (quoting *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998)). Where, as here, an entity both funds and administers the plan at issue, "there is an actual, readily apparent conflict." *Killian v. Healthsource Provident Admin., Inc.*, 152 F.3d 514, 521 (6th Cir. 1998). The Sixth Circuit has stated, that in such cases, the abuse of discretion or arbitrary and capricious standard still applies "but application of the standard should be shaped by the circumstances of [any] inherent conflict of interest." *Borda*, 138 F.3d at 1069; *see also Univ. Hosp. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000).

## III. DISCUSSION

Having reviewed the parties' briefs and the administrative record, the court concludes that, in light of the deferential review afforded to Defendant, Defendant's decision to deny Plaintiff's benefits was not arbitrary and capricious.

### A. L.J. Weathers as a Dependent under the Certificate

Plaintiff argues that he is eligible to receive accidental death benefits because L.J. Weathers is a dependant under the Certificate's third definition of a child dependent; i.e., L.J. Weathers is a dependent because he is Plaintiff's child "who does not reside with the [Plaintiff] but is the [Plaintiff's] legal responsibility for the provision of health care." (*See* AR 58.) Plaintiff reasons that he had a legal responsibility to provide health care because the divorce court ordered him to "maintain any health care coverage that is available at a reasonable cost, as a benefit of employment, for [L.J. Weathers]." (AR 346.) Defendant responds that this provision of the Certificate cannot apply because Plaintiff was not actually providing health care coverage for L.J. Weathers. Specifically, Defendant intimates that the Certificate's third definition does not apply because Plaintiff was either not required by law to provide health coverage (e.g., the cost was not reasonable), or he was failing to fulfill the legal obligation. According to Defendant's reasoning, in either case, the absence of coverage means that L.J. Weathers was not a dependent under the health-care responsibility definition. To decide whether Defendant's reasoning rises above the arbitrary and capricious threshold, the court must interpret the Certificate.

7

> "When interpreting ERISA plans, federal courts apply 'general rules' of contract law as part of the federal common law." *Cassidy v. Akzo Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir.2002). As such, "courts interpret ERISA plan provisions according to their plain meaning, in an ordinary and popular sense," giving effect to any unambiguous terms. *Id.* at 617-18 (internal quotation marks and citations omitted).

*Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 512 (6th Cir. 2008).

The court is not convinced that Defendant's argument passes muster. First, the Certificate's language mentions nothing about complying with the legal responsibility to provide health care. Instead, the plain meaning suggests that if a legal responsibility to provide health care exists, then the child is a dependent regardless of the parent's fulfillment of that responsibility. Perhaps, Defendant's argument is that fulfilling the responsibility is an implied term of the Certificate, but Defendant points to nothing on the record suggesting that the parties to the ADD plan would have intended such a term. Defendant's argument also suggests that there was no legal responsibility in this case because the divorce court's requirements for imposing a responsibility were not present. For example, the record yields some support for the conclusion that the cost of the health care coverage was unreasonable. Plaintiff stated that he had an agreement with Burston that she would provide health care and he would provide life insurance. If Plaintiff knew, or had good reason to think, that Burston was providing health care for L.J. Weathers then any coverage he would have purchased might well have been completely duplicative. Since the benefit of purchasing duplicative coverage is a nullity, paying anything for it would be unreasonable.

But regardless of whether Plaintiff had a legal responsibility to provide *health care coverage* under the divorce decree, L.J. Weathers qualified as a dependent

8

because Plaintiff was required to provide *health care* under a different provision in the divorce decree. Under the divorce decree Plaintiff was required to "pay 49% of any and all uninsured health care expenses incurred by [L.J. Weathers]." And the Certificate requires a "legal responsibility for the *provision of health care*." The plain meaning of the phrase "provision of health care" includes but is broader than the provision of health-care insurance. Paying for a percentage of uninsured health care expenses, as was required by the divorce court, is the provision of health care. And, as such, Plaintiff had a legal responsibility to provide health care for L.J. Weathers, who was therefore a dependent under the Certificate. Because the Certificate's plain meaning would include L.J. Weathers as a dependent, it would be arbitrary and capricious to reject Plaintiff's claim on this basis.

### B. Multiple Insureds Under One Certificate

Defendant also argues that Plaintiff is not entitled to recover accidental death benefits because the Certificate states that two spouses who are employees cannot both apply for family coverage. Defendant reasons that since Plaintiff and Burston were married when they originally applied for an ADD plan, and since Plaintiff's application was after Burston's, Plaintiff's family coverage was void. At first glance, there are two potential issues with this reasoning. First, the parties do not cite anything on the record which explicitly states when Plaintiff and Burston were married. So, there is some question as to whether Plaintiff and Burston were actually spouses in 1994 and 1995 when they applied for coverage. But, in their briefing, both parties assume or state that Plaintiff and Burston were married in 1994 and 1995. (Pl.'s Rep. Br. 1; Def.'s Resp. Br. 6.) The court is inclined to follow their lead on this point—the record strongly implies

that Plaintiff and Burston were married when they applied for the ADD family coverage. (AR 16, 34, 343-49.)  Second, the Certificate that controls the outcome of this case was issued in 2004—after Plaintiff was divorced from Burston.  Nothing in the record explicitly ties the 2004 Certificate to the 1994 and 1995 certificates in place when Plaintiff and Burston applied for ADD family coverage.  But, again, the parties assume that the 2004 Certificate is a continuation of those in place in 1994 and 1995, and that the family coverage clause in the 2004 Certificate applies to Plaintiff's original application.  (Pl.'s Rep. Br. 1; Def.'s Resp. Br. 6.)  Moreover, the same may be inferred from the administrative record. (AR 16, 22-23, 219.)  Given the Certificate's clear language prohibiting two, married Ford employees from claiming family coverage, it was not arbitrary and capricious to conclude that Plaintiff could not claim the ADD benefit because both he and Burston applied for family coverage.

Moreover, the Certificate contains another clause, cited by neither Plaintiff nor Defendant, that prohibits duplicative coverage in certain cases: "A person may be insured under only one certificate at any one time under the policy."  (AR 41.)  Accordingly, if an insured dependent is a person "insured under [a] certificate" then the dependent may be covered by only one certificate.  The plain meaning of this statement has the effect of preventing a dependent from being insured under the ADD plan by more than one employee since each employee receives a certificate.  The question is therefore whether the phrase "person[s] . . . insured under [a] certificate" includes insured dependents or only the primary insureds, i.e., the enrolled employee.  Insured dependents are defined as the "Insured's dependents" who are "insured."  (AR 33.)  Accordingly, the plain language of the Certificate establishes that insured dependents

10

are part of the larger class of persons "insured under a certificate." Thus, a reasonable interpretation of the Certificate is that any given insured dependent can be covered by only one certificate and, therefore, can be claimed as an ADD dependent by only one employee. This analysis leaves open one question: whether L.J. Weathers was properly considered insured under Burston's or Plaintiff's certificate. The Certificate and Policy are silent on which certificate controls when an insured dependent is insured under multiple certificates. Given this ambiguity, the contract should be interpreted to render it reasonable. *See, e.g.*, 11 Williston on Contracts § 32:11 (4th ed.). It is immediately apparent that the only reasonable interpretation of the Policy and Certificate is that an earlier certificate will be effective over a later certificate. Otherwise, a later certificate could render a previous, validly-issued certificate invalid. Burston was the first to insure L.J. Weathers as an insured Dependent. It is true that the Certificate at issue was not the one under which Plaintiff applied in 1995, but one may infer from the record that Burston and Plaintiff continuously covered L.J. Weathers. Assuming this, it is reasonable to confer a first-in-time status on Burston's certificate. The court will therefore find that it is not arbitrary and capricious to find that L.J. Weathers could not be covered under Plaintiff's Certificate.[1]

---

[1] If only in passing, the court deems the Policy's incontestibility clause worth mentioning, given that it was not cited by the parties. The clause states that Defendant "will not contest the validity of the policy after it has been in force [for two] years," (AR 47), and the court views this as referring to contesting the master policy with Ford, not the validity of coverage with individual insureds. An exception to the incontestability clause is contesting "the policy's" validity based on failure to pay "the premium"; *the premium* is the sum of *individual premiums*. Accordingly, the incontestability clause must refer to Defendant's ability to challenge the *master Policy with Ford*, rather than an individual's coverage.

## IV.  CONCLUSION

Since L.J. Weathers could not be covered under both Plaintiff's and Burston's certificates, Defendant's denial of Plaintiff's benefits was not arbitrary and capricious.

IT IS ORDERED that Defendant's motion for judgment [Dkt. # 21] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for judgment [Dkt. # 17] is DENIED.

 S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  October 28, 2009


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 28, 2009, by electronic and/or ordinary mail.

 S/Felicia Moses for Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522